NO ORAL ARGUMENT SCHEDULED
No. 25-3084

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

PHILIP DUPREE,

Defendant-Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIEF FOR THE UNITED STATES AS APPELLEE

> HARMEET K. DHILLON
>   Assistant Attorney General
>
> JESUS A. OSETE
>   Principal Deputy Assistant Attorney General
>
> ROBERT J. KEENAN
>   Acting Deputy Assistant Attorney General
>
> DAVID N. GOLDMAN
> GRETA GIESEKE
>   Attorneys
>   Department of Justice
>   Civil Rights Division
>   Appellate Section
>   Ben Franklin Station
>   P.O. Box 14403
>   Washington, D.C.  20044-4403
>   (202) 679-4564

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

A.  Parties and Amici

All parties appearing in the district court and before this Court are listed in the Appellant's Certificate as to Parties, Rulings, and Related Cases.

B.  Ruling Under Review

References to the ruling at issue appear in the Appellant's Certificate as to Parties, Rulings, and Related Cases.

C.  Related Cases

The United States is not aware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

 /s/ Greta Gieseke
GRETA GIESEKE
Attorney

Date:  April 6, 2026

## TABLE OF CONTENTS

**PAGE**

CERTIFICATE AS TO PARTIES, RULINGS, AND
RELATED CASES

GLOSSARY OF ABBREVIATIONS

STATEMENT OF JURISDICTION ....................................................... 1

STATEMENT OF THE ISSUES ............................................................. 1

PERTINENT CONSTITUTIONAL PROVISIONS,
STATUTES, AND RULES ...................................................................... 2

STATEMENT OF THE CASE ................................................................ 2

    A.    Factual Background ................................................................. 2

    B.    Procedural Background ........................................................... 7

        1.    Indictment ..................................................................... 7

        2.    Motions to Dismiss the Obstruction Charge ................. 8

            a.    Federal Nexus ....................................................... 8

            b.    Venue ................................................................... 10

        3.    Motions in Limine ....................................................... 12

        4.    Proposed Jury Instructions .......................................... 19

        5.    Verdict and Post-Trial Proceedings ............................ 20

        6.    Sentencing ................................................................... 21

**TABLE OF CONTENTS (continued):**                    **PAGE**

SUMMARY OF ARGUMENT ................................................................ 26

ARGUMENT ...................................................................................... 29

I.    The district court did not err in denying Dupree's
      motions to dismiss the obstruction charge .......................... 29

      A.    Standard of Review ..................................................... 29

      B.    The district court's decision not to dismiss the
            obstruction charge did not prejudice Dupree .............. 29

      C.    The Indictment stated an offense ............................... 31

      D.    Venue was proper......................................................... 34

II.   The district court did not abuse its discretion by
      admitting evidence of Dupree's employment history ........... 36

      A.    Standard of Review ..................................................... 36

      B.    Legal Standard............................................................ 37

      C.    The evidence was admissible under Rule 404(b)
            to prove the willfulness element of Count 1 ................ 38

      D.    The prior-employment evidence was not unfairly
            prejudicial.................................................................... 41

      E.    The district court did not abuse its discretion by
            rejecting Dupree's attempt to introduce positive
            character evidence ....................................................... 44

III.  The district court properly instructed the jury on the
      element of willfulness for Count 1 ....................................... 45

**TABLE OF CONTENTS (continued):**                    **PAGE**

    A.    Standard of Review ........................................................ 45

    B.    The court correctly instructed the jury on willfulness ................................................................. 47

    C.    Dupree's proposed jury instruction was inconsistent with binding precedent ........................... 50

IV.    The district court did not err in using the aggravated assault sentencing guideline ................................................... 51

    A.    Standard of Review ........................................................ 51

    B.    The district court did not err in finding that Dupree committed a felonious assault that involved a dangerous weapon with intent to cause bodily injury ........................................................ 51

V.    The district court did not abuse its discretion when imposing a within-Guidelines sentence ............................... 53

    A.    Standard of Review ........................................................ 53

    B.    Dupree's sentence was procedurally reasonable ......... 54

        1.    Findings of Fact ................................................. 54

        2.    Section 3553(a) Factors ...................................... 57

        3.    Dangerous Weapon Enhancement ...................... 60

    C.    Dupree's sentence was substantively reasonable ....... 61

VI.    The district court did not commit plain error in restricting Dupree's employment as a condition of supervised release ............................................................ 63

**TABLE OF CONTENTS (continued):**                    **PAGE**

A.    Standard of Review ........................................................ 63

B.    Plain error review applies............................................. 63

C.    Under any standard of review, the restriction
      is valid .......................................................................... 64

CONCLUSION ................................................................................... 67

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**PAGE**

**CASES:**

*Al-Tamimi v. Adelson*, 916 F.3d 1 (D.C. Cir. 2019) .................... 31, 55, 60

*Fowler v. United States*, 563 U.S. 668 (2011) ................................. 27, 33

*Gall v. United States*, 552 U.S. 38 (2007) ............................................ 54

*Hamling v. United States*, 418 U.S. 87 (1974) ..................................... 32

*Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015) ................................. 40

*Screws v. United States*, 325 U.S. 91 (1945) ............. 19-20, 38, 47, 49, 51

*United States v. Alford*, 89 F.4th 943 (D.C. Cir. 2024) ........................... 61

*United States v. Ballestas*, 795 F.3d 138 (D.C. Cir. 2015) ............... 32, 34

*United States v. Berman*, 145 F.4th 1376 (D.C. Cir. 2025) ................... 51

*United States v. Betts*, 511 F.3d 872 (9th Cir. 2007) ............................. 65

*United States v. Bowie*, 232 F.3d 923 (D.C. Cir. 2000) .................... 37, 39

*United States v. Brown*, 597 F.3d 399 (D.C. Cir. 2010) ......................... 43

*United States v. Brown*, 125 F.4th 1186 (D.C. Cir. 2025) ...... 22-23, 52-53

*United States v. Burnett*, 827 F.3d 1108 (D.C. Cir. 2016) ..................... 51

*United States v. Burroughs*, 613 F.3d 233 (D.C. Cir. 2010) ................... 63

**CASES (continued):**                                              **PAGE**

*United States v. Carlson*, 406 F.3d 529 (8th Cir. 2005)...........................65

*United States v. Cassell*, 292 F.3d 788 (D.C. Cir. 2002) ..............37-38, 42

*United States v. Clark*, 156 F.4th 664 (D.C. Cir. 2025)...............38, 46-51

*United States v. Davis*, 181 F.3d 147 (D.C. Cir. 1999) ......................42-43

*United States v. Dorcely*, 454 F.3d 366 (D.C. Cir. 2006) .......................62

*United States v. Ehrlichman*, 546 F.2d 910 (D.C. Cir. 1976)......38, 47-51

*United States v. Fakih*, 264 F. App'x 78 (2d Cir. 2008) ..........................35

*United States v. Gartmon*, 146 F.3d 1015 (D.C. Cir. 1998) ..............38, 42

*United States v. Hart*, 324 F.3d 740 (D.C. Cir. 2003)........................55-56

*United States v. Knight*, 824 F.3d 1105 (D.C. Cir. 2016) .......................59

*United States v. Lanier*, 520 U.S. 259 (1997) .........................................38

*United States v. Lawrence*, 662 F.3d 551 (D.C. Cir. 2011) ..........46, 53-54

*United States v. Leyva*, 916 F.3d 14 (D.C. Cir. 2019) ........................54-56

*United States v. Machado-Erazo*, 47 F.4th 721 (D.C. Cir. 2018) ...........36

*United States v. Malenya*, 736 F.3d 554 (D.C. Cir. 2013).......................64

*United States v. Proano,* 912 F.3d 431 (7th Cir. 2019).......................39-41

*United States v. Purvis*, 21 F.3d 1128 (D.C. Cir. 1994).....................46-47

*United States v. Ritter*, 167 F.4th 677 (4th Cir. 2026) ...........................33

**CASES (continued):**                                                    **PAGE**

*United States v. Salmon*, 948 F.2d 776 (D.C. Cir. 1991) ........................ 60

*United States v. Sammoury*, 74 F.3d 1341 (D.C. Cir. 1996) .................... 60

*United States v. Smith*, 38 F. App'x 615 (D.C. Cir. 2006) ...................... 60

*United States v. Stubblefield*, 643 F.3d 291 (D.C. Cir. 2011) ............ 29-31

*United States v. Vega*, 826 F.3d 514 (D.C. Cir. 2016) ............................ 39

*United States v. Veliz*, 800 F.3d 63 (2d Cir. 2015) ................................ 33

*United States v. Verrusio*, 762 F.3d 1 (D.C. Cir. 2014) .......................... 29

*United States v. Worrell*, 848 F. App'x 5 (Mem.) (D.C. Cir. 2021) .... 23, 52

**STATUTES:**

18 U.S.C. 241 ..................................................................................... 48

18 U.S.C. 242 .................................................. 7, 20, 38-40, 47, 49

18 U.S.C. 1512 .............................................................................. 33-34

18 U.S.C. 1512(b)(3) .................................................. 8, 20, 32-33, 35, 62

18 U.S.C. 1512(i) ...................................................................... 11, 34-35

18 U.S.C. 1515(a)(1)(A) ................................................................... 34

18 U.S.C. 3231 ..................................................................................... 1

18 U.S.C. 3553(a) .................................................... 24, 28, 57, 59, 63-64

18 U.S.C. 3553(a)(1) ....................................................................... 57

## STATUTES (continued):                                      PAGE

18 U.S.C. 3553(a)(2)(A) ...............................................................58

18 U.S.C. 3553(a)(2)(A)-(B) .......................................................59

18 U.S.C. 3553(a)(6) ...................................................................58

18 U.S.C. 3661 ............................................................................54

28 U.S.C. 1291 .............................................................................. 1

42 U.S.C. 1983 .......................................................................39-40

## GUIDELINES:

Sentencing Guidelines § 1B1.4 ................................................. 62

Sentencing Guidelines § 2A2.2 ................................................. 52

Sentencing Guidelines § 2A2.2(a) ............................................ 21

Sentencing Guidelines § 2A2.2(b)(2)(B) ................................... 21

Sentencing Guidelines § 2A2.2(b)(3)(A) ................................... 22

Sentencing Guidelines § 2A2.2, comment. (n.1) ...................... 52

Sentencing Guidelines § 2A2.2, comment. (n.3) ................. 22, 60

Sentencing Guidelines § 2H1.1(a)(1) ........................................ 21

Sentencing Guidelines § 2H1.1(b)(4)(B) ................................... 22

Sentencing Guidelines § 5D1.3(b) ............................................ 64

Sentencing Guidelines § 5F1.5 ................................................. 65

**GUIDELINES (continued):** **PAGE**

Sentencing Guidelines § 5K2.0 ............................................................ 60

Sentencing Guidelines § 5K2.1 ............................................................ 60

Sentencing Guidelines § 6A1.3(a) ........................................................ 54

**RULES:**

Fed. R. Crim. P. 12(b)(3)(B)(v) ........................................................... 31

Fed. R. Crim. P. 29(a) ......................................................................... 20

Fed. R. Crim. P. 29(b) ......................................................................... 20

Fed. R. Crim. P. 29(c) .......................................................................... 21

Fed. R. Crim. P. 52(a) .................................................................... 29, 43

Fed. R. Evid. 403 .............................................. 16-17, 27, 37-38, 41-43

Fed. R. Evid. 404(a)(1) ........................................................................ 44

Fed. R. Evid. 404(b) .............................. 12, 15-16, 27, 37-39, 41, 43-44

Md. Rule 4-248 ................................................................................... 24

# GLOSSARY OF ABBREVIATIONS

**A**                Appendix

**DHPD**        District Heights Police Department

**EMT**          Emergency Medical Technician

**FHPD**         Fairmount Heights Police Department

**OC Spray**    Oleoresin Capsicum Spray (Pepper Spray)

**PGPD**         Prince George's County Police Department

**PSR**           Presentence Investigation Report

**SA**             Supplemental Appendix

## STATEMENT OF JURISDICTION

This appeal is from a district court's final judgment in a criminal case. The district court had jurisdiction under 18 U.S.C. 3231. The court sentenced defendant-appellant Philip Dupree on July 16, 2025, and issued its written judgment on July 18, 2025. A1254.[1] Dupree timely filed a notice of appeal on July 28, 2025. A1278. This Court has jurisdiction under 28 U.S.C. 1291.

## STATEMENT OF THE ISSUES

1.    Whether the district court erred in denying Dupree's motions to dismiss the obstruction-of-justice charge.

2.    Whether the district court abused its discretion in admitting Dupree's prior employment history as evidence of his intent and knowledge.

3.    Whether the district court plainly erred by instructing the jury that the Government did not need to prove that Dupree knew his conduct would actually violate Sinclair's constitutional rights.

---

[1] "A__" refers to pages in the Appendix filed with Appellant's opening brief. "SA__" refers to pages in the Supplemental Appendix filed with this brief. "Br. __" refers to pages in Appellant's opening brief. "PSR __" refers to pages in the Presentence Investigation Report filed under seal with this brief.

4.     Whether the district court clearly erred when it found that pepper spray was a dangerous weapon.

5.     Whether the district court abused its discretion when sentencing Dupree within the Guidelines' advisory range.

6.     Whether the district court plainly erred by prohibiting Dupree's employment as a security guard or law-enforcement officer as a special condition of supervised release.

## PERTINENT CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES

Pertinent constitutional provisions, statutes, and rules are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.     Factual Background

In the early morning hours of August 4, 2019, defendant-appellant Philip Dupree, an officer with the Fairmount Heights Police Department (FHPD), initiated a traffic stop on a car that he purportedly observed speeding in Fairmount Heights, Prince George's County, Maryland. A1163-1164. The car pulled over on Eastern Avenue NE, after driving for approximately half a mile. A1164. The eastern sidewalk of Eastern

Avenue forms the border between Fairmount Heights and the District of Columbia, but Eastern Avenue itself is in D.C. A1163.

Dupree approached the car, which was occupied by driver Torrence Sinclair (Sinclair) and his sister, Taylor Sinclair (Taylor). A1164. At some point, the traffic stop turned hostile, and Dupree handcuffed Sinclair and called for backup. A1164. Corporal Jason Buie of the Prince George's County Police Department (PGPD) was then dispatched to the scene. A1164.

The Sinclairs also called for backup. When their mother—who they were on the phone with when the traffic stop occurred—heard that they had been pulled over, she raced to the scene and began filming with her phone. A1164. After the stop, but before her mother arrived, Taylor also called 911 and requested that a D.C. police officer be sent to Eastern Avenue. A1164. She told the 911 operator that she felt unsafe because Dupree had approached the car with his can of oleoresin capsicum spray ("OC" or "pepper" spray) drawn and said: "Put your hands behind your back or I'm gonna turn this body camera on and make it a legitimate arrest." A1164. Officer Lancelot Francioni of the Metropolitan Police Department was then dispatched to the scene. A1164.

Dupree placed the handcuffed Sinclair in the front passenger seat of his car. A1165. Eventually, a tow truck arrived to tow the Sinclairs' car. A1164. At the direction of her mother, Taylor got back in their car to prevent it from being towed. A1164. When Dupree and Francioni told Taylor to get out of the car, she began screaming that she would not interact with male officers. A1164-1165. While Francioni tried to establish a rapport with Taylor, Dupree drew and began shaking his can of OC spray. A1165. When Taylor still refused to get out of the car, Dupree removed her, handcuffed her, and passed her to Francioni, who attempted to deescalate the situation by calmly asking her questions. A1165.

Meanwhile, Sinclair yelled obscenities from Dupree's car while writhing in his handcuffs. A1165. He then activated the car's lights and sirens. A1165. Buie initially tried to calm Sinclair down, but when Sinclair became agitated and threatened to make the car roll down the street, Buie removed Sinclair from the car. A1165.

Jurisdictional confusion delayed transport of the Sinclairs. A1165. Francioni and Dupree incorrectly believed they were in Maryland, while the Sinclairs and Buie correctly asserted that they were in D.C. A1165.

During these delays, Sinclair acted belligerent and verbally antagonized Dupree. A1165-1166.

Eventually, Dupree grabbed Sinclair and returned him to the front seat of his car. A1166. Dupree then stood next to the passenger side of the car with the door open while Sinclair yelled, "I don't want to go with him! Can y'all let somebody else take me?" A1166. Dupree claims that Sinclair—while yelling from the passenger seat with his hands still cuffed behind his back—attempted to bite him. A1240-1242. Neither Francioni's bodycam nor Sinclair's mother's phone, both of which captured portions of this incident, captured the alleged attempted bite. A1242.

Dupree did not instantly react with force. A1242. Instead, he asked Sinclair, "Did you just?" and stepped back from the passenger door of the car. A1241. He then grabbed his OC spray, shook it, and moved back toward the car, before spraying a burst into Sinclair's face and neck from a few inches away. A1241. Sinclair screamed, writhed in pain, and demanded an ambulance. A1166; A1241. An ambulance arrived ten minutes later but EMTs could not treat or decontaminate Sinclair because he was so agitated. A1241. Dupree once again returned Sinclair

to the front seat of the car and drove him to the FHPD station. A642; A1241.

After approximately three and a half hours, Dupree took Sinclair from the FHPD station to the jail. A642. In the probable-cause statement that Dupree filed with a Maryland state commissioner, Dupree reported that after he placed Sinclair in his car, Sinclair "started to kick and damage things inside of the police car" and "reached around and unlocked the police door and tired [sic] to jump out of the car several times"; Dupree "tried to work with [Sinclair] but he kept on trying to fight and bite [Dupree]"; "Dupree deployed [his] Department issued (Pepper Spray) which did get [Sinclair] to comply for a short time"; "Dupree called for assistance from Prince Georges [sic] County police"; the "Fire Board (ambulance) #840 came and decontaminated [Sinclair]"; "Dupree transported [Sinclair] to DOC Upper Marlboro jail without incident"; and that "[a]ll of these events did occur in Prince Georges [sic] County Maryland." A1298-1299.

At trial, both Buie and Francioni testified that Sinclair did not pose any threat, was under physical control, and was not trying to fight or bite Sinclair in the moments before Dupree pepper sprayed him in the

- 6 -

face. A411; A563; SA15-21; SA39-40. Buie testified that he was "in disbelief" after witnessing the pepper spray. A411-412. Likewise, Francioni explained that there "was no reason" Dupree pepper-sprayed Sinclair "other than [Sinclair] … yelling and being belligerent, … especially being in handcuffs." SA40. Both officers also testified that they had taken steps to deescalate the situation (SA23-24; SA36-37), which is how officers are trained to handle difficult individuals (A724-725; A1023). They testified that officers must have "thick skin" (SA38) and that "no one is happy to get handcuffed … so they go through all sorts of emotions, upset, crying, jumping around" (SA14). Francioni crystallized the primary issue before the jury: "You don't pepper-spray anyone that's handcuffed, plain and simple. You just don't do that." SA43.

## B.    Procedural Background

### 1.    Indictment

In August 2022, a federal grand jury in D.C. returned a two-count indictment against Dupree related to the events on August 4, 2019. A22-24. Count 1 charged Dupree with Deprivation of Rights Under Color of Law, in violation of 18 U.S.C. 242, and alleged that he caused bodily injury to Sinclair using a dangerous weapon (*i.e.*, the pepper spray). A23.

Count 2 charged him with Obstruction of Justice, in violation of 18 U.S.C. 1512(b)(3), and alleged that Dupree included false statements in his probable-cause statement to cover up his use of excessive force:

> DUPREE, knowingly engaged in misleading conduct toward another person with intent to hinder, delay, and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of the federal offense charged in Count 1; that is, to hinder, delay, and prevent communication to the Federal Bureau of Investigation of information concerning DUPREE's use of unreasonable force against [Sinclair], DUPREE knowingly and intentionally submitted a statement of probable cause, dated August 4, 2019, to a Maryland state commissioner that falsely reported the circumstances surrounding and justifying DUPREE's use of pepper spray.

A23-24.

### 2.    Motions to Dismiss the Obstruction Charge

### a.    Federal Nexus

Before trial, Dupree moved to dismiss Count 2 because "there are no facts [in the indictment] supporting a federal nexus." A169. In opposition, the Government argued that Dupree misunderstood what the Government was required to prove for obstruction of justice and that the

indictment adequately alleged the elements, and that any further facts would have to be proven at trial, not in the indictment. A126.

Noting that "Dupree's Motion [was] not a model of clarity," (A171) the district court construed Dupree's motion as making several arguments and rejected each one. A171-173. First, the district court construed Dupree's motion as arguing that the indictment failed to state an obstruction-of-justice offense because there was no federal investigation underway or contemplated at the time of Dupree's alleged obstruction. A171. The district court rejected this argument, observing that "[t]he charging statute does not require that any federal investigation actually have occurred at the time or even afterwards." A171. Next, the district court rejected Dupree's argument that "the Indictment does not allege facts showing that [Dupree's] use of his department-issued pepper spray would give rise to a reasonable belief of a federal civil rights violation." A171. The district court found that the indictment sufficiently alleged that Dupree's "use of pepper spray would have borne a reasonable belief of unconstitutionality." A172. Finally, the district court rejected the argument that there was no reasonable likelihood that the misleading information in the probable-cause

statement would be made to a federal law enforcement officer as opposed to a state officer. A172. Because the indictment alleged that Dupree had been "trained in and was aware of use of force limits under the constitution," had "allegedly violated [Sinclair's] constitutional rights," and had "falsely reported the circumstances surrounding this use of pepper spray," the district court concluded that "it was reasonably likely that this information would be transferred to the FBI or other federal law enforcement officer." A172. The district court therefore concluded that "the Indictment include[d] enough context for Defendant Dupree to reasonably infer how his submission of the allegedly false probable cause statement could have impeded a future federal investigation." A173.

### b.    Venue

In his pre-trial memorandum, Dupree argued for the first time that venue was improper in D.C. for the obstruction charge. A202-207. Dupree argued that venue was improper because the conduct constituting the offense occurred in Maryland, where he authored and submitted the allegedly false probable-cause statement. A204-205. He also argued that because he was not charged with obstructing a specific "official proceeding," the portion of the venue statute authorizing venue in "the

district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected," 18 U.S.C. 1512(i), was not applicable in this case. A203-204. The district court construed this as a motion to dismiss the obstruction charge for improper venue and instructed the Government to respond. SA6.

The Government opposed this motion (SA1-4) and argued that venue was proper in D.C. because "the FBI's investigation, as well as the Grand Jury proceedings and these judicial proceedings, constitute official proceedings for purposes of § 1512" (SA2). And Dupree's allegedly false probable-cause statement was "intended" to "affect[]" those proceedings. SA2.

The district court agreed with the Government and held that there was a "legally cognizable path for venue here in the District of Columbia" under 18 U.S.C. 1512(i) because the grand jury investigation and district court proceedings in this matter were "official proceedings." SA11-12. The court concluded, however, that the parties' disagreement was a dispute of material fact over venue that should ultimately be submitted to the jury. SA12; *see* A1133.

### 3.    Motions in Limine

Dupree and the Government each sought pre-trial rulings on whether the Government could admit under Federal Rule of Evidence 404(b): (1) three documents concerning Dupree's prior employment with the District Heights, Maryland Police Department (DHPD); and (2) evidence of Dupree's conduct during a traffic stop in 2018. A34; A57.

The first of the three documents was a letter that Dupree's former supervisor, DHPD Chief Elliott Gibson, sent Dupree informing him that an "Early Warning Tracking System" at DHPD had received an "unprecedented" eleven written citizen complaints against him in his seven months of employment. A50; A179-180. The letter referenced the kinds of complaints, which included one complaint of excessive force, one of use of force, multiple complaints of harassment, and several complaints of unprofessional and unbecoming conduct. A50. The letter also reported that Gibson had "numerous counseling sessions" with Dupree in which he asked Dupree to "try to refrain from appearing angry/aggressive" and "from using demeaning language or sarcastic remarks." A51. Finally, the letter noted that Dupree had agreed to "work on [his] demeanor/conduct," but had since received five more complaints,

and that, given the number of complaints, Dupree's probationary period would be extended. A51.

The second document was a termination notice that Gibson sent Dupree approximately five months later. A54; A180. It informed Dupree that DHPD was terminating him because "[c]areful documentation, counseling, and retraining [had] not brought about any discernable changes in [his] productivity and the number and kinds of complaints [he] receive[d]." A54.

The third document was Dupree's application to work at FHPD, in which he admitted that he had been "Invesgated [sic] for use of force cleared Than [sic] Torminated [sic]." A56; A188.

The Government sought admission of this evidence because it was relevant to material issues other than Dupree's character. This included: for Count 1, showing Dupree's knowledge, intent, and the absence of mistake or lack of accident; and for Count 2, showing his intent and motive to lie in his probable-cause statement. A40-45. As to Count 1, the Government argued that the evidence showed that Dupree knew the limits of permissible force and that he could be disciplined for using excessive force, and that despite this knowledge, he acted with willful

- 13 -

intent when using excessive force against Sinclair. A40. For Count 2, the Government argued that the evidence showed a motive to lie in the probable-cause statement—specifically, that Dupree provided false information because he knew that he likely would be fired again and criminally prosecuted if the true circumstances of his encounter with Sinclair came to light. A43-45.

For similar purposes, the Government also sought to introduce evidence of a 2018 incident that was exceedingly similar to the incident with Sinclair. A37-38. In 2018, Dupree conducted a traffic stop as an FHPD police officer. Dupree slammed the driver onto the hood of his car, restrained her by cuffing her hands behind her back, and then sat her in the front seat of his police cruiser. A38. The driver became distraught and verbally abusive and spat at Dupree. A38. In a fit of rage, Dupree then sprayed her face with OC spray without any legitimate law enforcement purpose. A38. After arresting the driver, Dupree submitted a probable-cause statement to a Maryland state commissioner, falsely reporting the circumstances surrounding and justifying his use of excessive force. A38. This falsified probable-cause statement secured state charges against the driver. A38.

Dupree argued that the foregoing evidence did not meet any of the permissible purposes of Rule 404(b). He further argued that the potential for the evidence to prejudice him substantially outweighed any probative value. A70-77.

The district court issued two detailed written orders on this issue. The first order held that the prior-employment evidence was admissible under Rule 404(b) for several reasons. First, it showed that Dupree knew the limits of permissible use of force, which was directly relevant to the knowledge and intent elements the Government must prove to meet its burden on Count 1. A184-185 ("That [Dupree] was trained on and ultimately terminated for his behavior on the job, which included a complaint of use of force and one of excessive force, make it more probable that when he pepper-sprayed [Sinclair] he acted with the required mens rea."). Second, it showed Dupree's lack of mistake or accident as to Count 1 because "[t]he previous complaints against [Dupree], the training he received, and his continued behavior leading to termination all make it more probable that he did not act accidentally when using excessive force against [Sinclair], which the Government is required to prove." A185-186. Finally, the evidence was relevant to Count 2, as to Dupree's motive to

lie and intent. A186. The court also held that the evidence of the 2018 incident was admissible under Rule 404(b) for Count 1 but not Count 2. A190.

The court declined to decide before trial whether the evidence would unfairly prejudice Dupree because "a final decision as to whether this evidence shall be admitted under Rule 403 would be better informed by the meaning, foundation, and relevance of the evidence within the framework of the trial." A186-187; A191. Waiting to admit the evidence at the end of the Government's case would "allow the Court to weigh its probative value against any possible unfair prejudice in the context of the evidence presented at trial." A187. The district court further noted that if the evidence were admitted, the court would "give a limiting instruction to the jury as to the purpose of the Rule 404(b) evidence and how the jury is to consider it" and that in making its final decision on Rule 403, the court would "consider the manner in which the Government intends to present the Rule 404(b) evidence and the effectiveness of any proposed limiting instructions." A187.

The district court issued its second order during trial. It held that the three prior-employment documents were admissible under Federal

Rule of Evidence 403 because their probative value was not substantially outweighed by the danger of unfair prejudice to Dupree. A887-890. The court expressly weighed the probative value against the potential prejudice:

> These documents—which mention the various complaints waged against Defendant Dupree, the training that he received, and his ultimate termination—all evince Defendant's behavior as a DHPD officer, what he knew about the appropriateness and permissibility of such behavior, and what he knew could occur as a result of like behavior. This is closely related to Defendant's conduct at issue in this case.

A888-889. "On the other side of the Rule 403 ledger," the court found that that "the risk of unfair prejudice [did] not substantially outweigh the high probative value, where the documents describe in general terms certain circumstances involving Defendant's employment and termination from DHPD." A889. Further, there was "no unfair risk that the jury will misuse this evidence to infer that [Dupree] is prone to commit the crime charged … particularly where the Court will instruct the jury as to how they can consider this evidence." A889.

The district court excluded evidence of the 2018 incident, however, because "it carrie[d] a risk of unfair prejudice that substantially

- 17 -

outweighs the probative value" for two reasons. A889. First, the "proffered evidence [was] factually analogous—and nearly factually equivalent—to the crimes charged in the Indictment" and may come "perilously close to showing" a disposition to commit the charged crime, and criminal propensity. A889. Second, there was "a significant risk that the jury could be persuaded to find [Dupree] guilty, not by the quality of the evidence against him, but by the quantity, or repetition, of the allegations" or "under the theory that he is a bad police officer with a tendency to use excessive force and falsify probable cause statements and, accordingly, he must be criminally liable for at least one of those incidents." A889-890.

At trial, the Government introduced the prior-employment evidence through the testimony of DHPD Chief Gibson. A763-792. The court issued the following limiting instruction to the jury on this evidence:

> [I]f you determine that the defendant violated a policy of the [FHPD] or acted contrary to his police academy training, you should consider that evidence only in determining whether the defendant acted willfully. You should not consider that evidence in determining whether the defendant's actions violated the Constitution in the first instance.

- 18 -

SA47.

### 4.    Proposed Jury Instructions

Before trial, the parties submitted different versions of a willfulness jury instruction for Count 1, the deprivation-of-rights charge. A194-200. The Government proposed an instruction derived from *Screws v. United States*, 325 U.S. 91 (1945), and its progeny. A194-198. Dupree requested a short two-sentence instruction: "Willfulness requires that the government prove that the law enforcement officer intended to engage in the unlawful conduct and that he did so knowing that it was unlawful. Mistake, fear, misperception, or even poor judgment does not constitute willful conduct." A198-199.

The district court ultimately gave a hybrid instruction:

> A person acts willfully if he acts voluntarily and deliberately with the specific intent to do something the law forbids.
>
> In this case, the government must prove that the defendant used force knowing that the force he used was unreasonable. To find that the defendant acted willfully, it's not necessary for the government to prove that the defendant knew that this action would actually violate anyone's constitutional rights.

A1089. Dupree echoed this jury instruction in a post-trial motion:

> As this Court instructed the jury, "[a] person acts willfully if he acts voluntarily and deliberately *with the specific intent to do something the law forbids."* … *This instruction is consistent with Screws v. United States*, … in which the Supreme Court held that Congress intended a special requirement of intent to violate federal rights, rather than just a generalized "bad purpose."

A1151-1152 (second emphasis added).

### 5.    Verdict and Post-Trial Proceedings

The case proceeded to a jury trial in June 2024. A14-15. At the close of the Government's evidence, Dupree moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a). A15 (Docket Minute Entry 06/11/2024). The Court reserved decision on that motion under Rule 29(b). A15 (Docket Minute Entry 06/11/2024). Dupree then presented his defense, and the case was submitted to the jury. A15 (Docket Minute Entry 06/14/2024).

The jury convicted Dupree on Count 1 (18 U.S.C. 242) but acquitted him of Count 2 (18 U.S.C. 1512(b)(3)). A1132. The jury also made a unanimous special finding that Dupree caused bodily injury to Sinclair. A1132. Because Count 1 was only a felony if bodily injury resulted *or* if the act included a dangerous weapon, *see* 18 U.S.C. 242, the verdict form asked whether the jury unanimously found that (1) the offense included

the use of a dangerous weapon; or (2) the offense resulted in bodily injury. A1132. With both parties' agreement (A1094-1095) the court instructed the jury that if it "unanimously find[s] 'yes' as to one of the special findings, then [it] do[es] not need to document [its] vote on the other special finding" (A1123). The jury found that bodily injury resulted but made no finding of whether the offense included a dangerous weapon. A1132.

Following the verdict, Dupree filed a renewed motion for a judgment of acquittal on Count 1 under Rule 29(c), arguing that there was insufficient evidence. A1166. The district court denied Dupree's renewed motion (A1163-1178), and Dupree does not press his sufficiency-of-the-evidence arguments on appeal.

### 6.    Sentencing

A probation officer issued a Presentence Investigation Report (PSR) that calculated a total offense level of 27 and a Guidelines' advisory range of 70 to 87 months' imprisonment. A1200-1201; PSR 15. This calculation included a 14-point base offense level for aggravated assault (Sentencing Guidelines §§ 2H1.1(a)(1), 2A2.2(a)), and three enhancements: 4 points for using a dangerous weapon, *i.e.*, pepper spray (*id.* § 2A2.2(b)(2)(B)); 3

- 21 -

points because the victim sustained bodily injury (*id.* § 2A2.2(b)(3)(A));
and 6 points because the offense was committed under color of law (*id.* §
2H1.1(b)(4)(B)). A1201; PSR 6-7. Both parties filed objections to the PSR
calculation. A1191. Relevant here, Dupree objected that (1) the
aggravated assault base offense level did not apply because the OC spray
was not a dangerous weapon (A1192), and (2) use of both the aggravated
assault base offense level and the dangerous weapon enhancement
represented "double counting" (SA49-50). Dupree acknowledged,
however, that "the Guidelines were amended to clarify that 'in a case
involving a dangerous weapon with intent to cause bodily injury, the
court shall apply both the base offense level and [the dangerous weapon
enhancement].'" SA50 (quoting Sentencing Guidelines § 2A2.2, comment.
(n.3)). He also sought downward departures for victim misconduct and
susceptibility to prison abuse. A1187-1190.

Before sentencing, the district court issued a written opinion
overruling the parties' objections. A1191-1198. The court first rejected
Dupree's argument that the OC spray was not a dangerous weapon.
A1193-1194. The court cited two opinions from this Court, in which
pepper spray constituted a dangerous weapon. A1193 (citing *United*

- 22 -

*States v. Brown*, 125 F.4th 1186, 1197-1198 (D.C. Cir. 2025); *United States v. Worrell*, 848 F. App'x 5 (Mem.) (D.C. Cir. 2021)). Because these decisions are "authoritative," the court rejected the out-of-circuit precedent that Dupree cited. A1193-1194.

The court then recounted the evidence that supported its finding that the OC spray was a dangerous weapon: (1) "testimony by Sergeant William Gleason, a master instructor on, *inter alia*, pepper spray and chemical agents, characterizing 'OC spray or pepper spray' as a 'less lethal weapon'"; (2) "testimony by law enforcement officers, such as [Buie], who described the resulting pain when they were pepper-sprayed during their training," that he would "rather get punched," and that it "burns, a burning sensation wherever you get sprayed at" and "feels like you're on fire"; (3) Buie's testimony that after being sprayed, Sinclair "was feeling all the effects from the pepper spray, so burning, a burning sensation all over, and just feeling like he's on fire, and having trouble breathing"; (4) Buie's testimony that "the medics who responded to the scene 'did not' wash out Mr. Sinclair's face or eyes, which is 'how you decontaminate someone that has been sprayed with pepper spray'"; and (5) video evidence of Sinclair "being pepper-sprayed, and his reaction

thereto," which showed Sinclair "screaming for an ambulance, screaming that he needed medical attention, and describing the burning sensation as worse than third-degree burns." A1194 n.1.

The court also denied Dupree's double-counting objection and noted that Dupree even acknowledged that the Guidelines foreclosed the argument. A1195-1196. The opinion did not address Dupree's requested departures. *See* A1191-1198.

At the sentencing hearing, the district court adopted the PSR's calculation (A1201), sentenced Dupree within the Guidelines range to 74 months' imprisonment (A1249), and provided a non-exhaustive explanation of its considerations in determining a "fair, appropriate and reasonable sentence in conformance with the factors set out in 18 U.S.C. 3553(a)" (A1231-1249). This explanation began with the two matters in Dupree's criminal history: (1) a "Maryland state stet calendar case"[2] and (2) pending charges for conspiracy to commit bank fraud, arson affecting interstate commerce, and conspiracy to commit wire fraud in a Maryland federal case. A1231. As to the stet case, the court noted: "[S]o that's not

---

[2] A case on the "stet" docket is indefinitely postponed. *See* Md. Rule 4-248.

a conviction. Sitting here, at some later point, they can take action but the likelihood is limited." A1231.

Next, the court recited the evidence and circumstances of the offense at issue in this case, highlighting that: (1) "though the videos … don't clearly capture the moment when Officer Dupree claims Mr. Sinclair tried to bite him, they do show Officer Dupree taking four seconds to react"; (2) Dupree "indicated he knew he didn't have [his bodycam] on and could put it on but he never did"; (3) the false statements on the probable-cause affidavit; (4) Sinclair's testimony at sentencing about how Dupree's actions affected him physically and mentally, and eroded his trust in law enforcement; and (5) that Dupree "held the can of pepper spray when he first approached the Sinclairs … [and] used the can of pepper spray as a threat." A1231-1244.

The court also recounted Dupree's history and characteristics—which "increase[d] the seriousness of the offense" and "show[ed] a pattern of abuse of police power"—including (1) Gibson's testimony about the "unprecedented and alarming" number of complaints lodged against Dupree; (2) the 2018 incident that the court excluded from evidence; and (3) Dupree's termination in 2020 "from the P.G. County Community

College police department based on an incident that also involved use of force." A1241-1245.

The court also prohibited Dupree's employment in law-enforcement or security-related fields (unless approved by a probation officer) as a special condition of his supervised release. A1258. Dupree's counsel initially asked the court to limit the condition to "employment as a special police officer or as a police officer" but ultimately told the court: "I agree with you that he should not be a security officer while on supervised release." A1226-1227.

## SUMMARY OF ARGUMENT

1.      The district court did not err in denying Dupree's two motions to dismiss the obstruction-of-justice charge. First, the jury acquitted Dupree of this charge, and he cites no evidence that would not have been admitted if the charge had been dismissed before trial. He therefore was not prejudiced by the denials of his motions to dismiss, and any error was harmless. Second, the indictment sufficiently alleged the obstruction-of-justice offense. Dupree only challenges the federal-nexus element, and the indictment's allegation that Dupree falsified the probable-cause statement "*to hinder, delay, and prevent communication to the Federal*

*Bureau of Investigation* of information concerning [his] use of unreasonable force" satisfies the *Fowler v. United States* "reasonable likelihood of communication to a federal officer" standard. Third, venue in D.C. was proper because it is the district where Dupree intended to affect an official proceeding (*i.e.*, a federal grand jury investigation and prosecution for his use of excessive force against Sinclair) by falsifying the probable-cause statement.

2.     The district court did not abuse its discretion by admitting evidence of Dupree's prior employment for the deprivation-of-rights charge. First, this evidence was admissible under Rule 404(b) because it was directly relevant and highly probative of the "willfulness" element. Second, the court was correct to not exclude the evidence under Rule 403 because its probative value outweighed any potential prejudice. The court also took steps to mitigate any potential prejudice by issuing a clear limiting instruction.

3.     The district court properly instructed the jury on the "willfulness" element for the deprivation-of-rights charge. The instruction was correct as a matter of law, as this Court has previously approved a virtually identical instruction. Conversely, Dupree's

requested instruction and arguments on appeal ignore controlling caselaw.

4.    The district court did not err in using aggravated assault as the base offense under the Sentencing Guideline based on its finding that the pepper spray was a dangerous weapon. Circuit precedent provides that pepper spray can be a dangerous weapon, and the district court did not clearly err in finding that the pepper spray was a dangerous weapon here.

5.    The district court did not abuse its discretion when imposing a within-Guidelines sentence. First, the sentence was procedurally reasonable because the court did not clearly err in any of its fact findings, detailed the basis for the sentence using the Section 3553(a) factors, and properly used both the aggravated assault guideline and the dangerous weapon enhancement. Second, the sentence was substantively reasonable, as a within-Guidelines sentence is presumably reasonable and Dupree's arguments that he was a first-time offender do not tell the whole story about his troubling history.

6.    The court did not commit plain error in prohibiting Dupree's employment in law-enforcement or security-related fields while on

supervised release. First, his counsel agreed to the condition. Second, there is a direct relationship between Dupree's conviction and the restricted employment. Third, the court found that this restriction is reasonably necessary to protect the public given Dupree's past conduct and failure to improve in response to consequences.

## ARGUMENT

### I.    The district court did not err in denying Dupree's motions to dismiss the obstruction charge.

#### A.    Standard of Review

This Court reviews the denial of a motion to dismiss a criminal charge for failure to state an offense *de novo*. *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014). The denial of a motion to dismiss for lack of venue that concerns a question of law is likewise reviewed *de novo*. *Ibid.*

#### B.    The district court's decision not to dismiss the obstruction charge did not prejudice Dupree.

Federal Rule of Criminal Procedure 52(a) authorizes this Court to correct a district court's error only if it "affected the defendant's 'substantial rights.'" *United States v. Stubblefield*, 643 F.3d 291, 296 (D.C. Cir. 2011) (quoting Fed. R. Crim. P. 52(a)). Except in certain contexts of constitutional error not relevant here, this "means that the

- 29 -

error must have been prejudicial: It must have affected the outcome of the district court proceedings." *Id.* at 297 (citation and quotation marks omitted).

Dupree challenges the district court's denials of his motions to dismiss the obstruction charge. Br. 19-32. But the jury ultimately acquitted him on this charge. A1132. Nevertheless, Dupree argues that "by allowing the obstruction charge to proceed, the district court allowed the Government to portray [him] as a liar and to admit purported bad acts evidence in support of that charge." Br. 31. He also focuses on the venire, which he says was "predisposed to distrust the police." Br. 31; *see* Br. 31-32 (stating that voir dire took three days and he had to use peremptory strikes on jurors whom he believes should have been stricken for cause).

Assuming for the moment that the district court should have granted the motions to dismiss, *but see* pp. 36-45, *infra*, there was no prejudice. Dupree concedes that the district court admitted the evidence of his prior employment for *both* counts (Br. 33-34) and cites to nothing in the record indicating that the district court would have excluded the

evidence had it granted his motions to dismiss Count 2.[3] As for his claims about a biased venire, Dupree does not argue that any biased jurors were ultimately seated on the jury or that he suffered prejudice because of the empaneled jury. Nor does he cite any law to support this argument. *See Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) (explaining that a "party forfeits an argument by failing to raise it in his opening brief" or only "[m]entioning an argument 'in the most skeletal way'" (citation omitted)). Because Dupree was acquitted of the charge and cannot show any prejudice from its submission to the jury, the denials of his motions to dismiss did not affect the outcome of the trial. Any purported error was therefore "harmless." *Stubblefield*, 643 F.3d at 296.

In any event, as discussed below, the district court correctly denied Dupree's motions to dismiss.

### C.    The Indictment stated an offense.

A defendant may move before trial to dismiss an indictment in whole or in part for "failure to state an offense." *See* Fed. R. Crim. P. 12(b)(3)(B)(v). But "[b]ecause a court's use of its supervisory power to

---

[3] Section II of this brief, *infra*, addresses Dupree's challenge to the admission of this evidence for Count 1.

dismiss an indictment directly encroaches upon the fundamental role of the grand jury, dismissal is granted only in unusual circumstances." *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015) (quotation marks and citation omitted; alterations adopted).

When reviewing a motion to dismiss an indictment, a court must accept the truth of the factual allegations. *Ballestas*, 795 F.3d at 149. "An indictment's main purpose is to inform the defendant of the nature of the accusation." *Id.* at 148-149 (citation omitted). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quotation marks and citation omitted). The indictment here does precisely that.

Section 1512(b)(3) provides that "[w]hoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to … hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States" commits an

offense against the United States. 18 U.S.C. 1512(b)(3). Convicting a defendant under Section 1512(b)(3) requires a federal nexus. "[T]he Government must show that there was a *reasonable likelihood* that a relevant communication would have been made to a federal officer." *Fowler v. United States*, 563 U.S. 668, 670 (2011) (emphasis omitted).[4] Dupree challenges the federal-nexus element of Count 2. Br. 21.

Establishing a federal nexus is a low bar. The Government need only prove that "the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical." *Fowler*, 563 U.S. at 678. But the question here is not what the Government *must prove* to secure a Section 1512(b)(3) conviction. Rather, the question is what an indictment must include *to state* a Section 1512(b)(3) offense. Dupree relies solely on post-conviction cases (Br. 24-28), which do not answer this

---

[4] While *Fowler* concerned a different provision of 18 U.S.C. 1512, other circuits have extended its standard to Section 1512(b)(3). *See, e.g.*, *United States v. Veliz*, 800 F.3d 63, 74 (2d Cir. 2015); *United States v. Ritter*, 167 F.4th 677, 685-686 (4th Cir. 2026). Because Dupree contends that this same standard applies to 18 U.S.C. 1512(b)(3) and he loses under that standard, there is no need to decide in this case whether *Fowler* applies to Section 1512(b)(3).

question, and "fundamentally misperceives the nature of a motion to dismiss an indictment." *Ballestas*, 795 F.3d at 148.

The indictment alleged that Dupree falsified the probable-cause statement "*to hinder, delay, and prevent communication to the Federal Bureau of Investigation* of information concerning [his] use of unreasonable force." A24 (emphasis added). Not only does the indictment, accepted as true, demonstrate that there was a reasonable likelihood of communication to a federal officer, it alleges that such communication was the intended object of Dupree's conduct. The district court did not err by denying Dupree's first motion to dismiss.

## D.    Venue was proper.

A Section 1512 prosecution may be brought either (1) "in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected" or (2) "in the district in which the conduct constituting the alleged offense occurred." 18 U.S.C. 1512(i). This case concerns the first venue hook.

The statutory definition of "official proceeding" includes "a proceeding before a judge or court of the United States, a United States magistrate judge, … or a Federal grand jury." 18 U.S.C. 1515(a)(1)(A).

Count 2 alleged that Dupree made false statements on the probable-cause statement to cover up his deprivation-of-rights crime—including that it occurred in D.C. *See* A1298. And in seeking to cover up a federal crime that occurred in D.C., Dupree sought to affect a proceeding before a judge or court of the United States, a United States magistrate judge, or a Federal grand jury in the District of Columbia. *See, e.g.*, *United States v. Fakih*, 264 F. App'x 78, 80 (2d Cir. 2008) (holding that venue for witness tampering prosecution was proper in S.D.N.Y. under Section 1512(i), even though relevant conduct occurred in E.D.N.Y., because the defendant sought to tamper with an S.D.N.Y. grand jury). Venue was therefore proper in D.C.

Nonetheless, Dupree argues that venue was improper because Section 1512(b)(3) does not require an "official proceeding" for a conviction, so the official-proceeding venue hook cannot apply. Br. 29. That is a non sequitur. It is sufficient that the defendant "intended to … affect[]" an official proceeding, whether or not that proceeding ever takes place. *See* 18 U.S.C. 1512(i). Accordingly, venue for Count 2 was proper in D.C., the district where such an official proceeding would (or, as here, did) take place.

Dupree further maintains that, even if the official-proceeding hook applies, venue was improper because "an FBI investigation does not constitute an official proceeding." Br. 29. The district court agreed with him on this point but reasoned that the grand jury and judicial proceedings in this case are "official proceedings." SA11-12. Dupree does not challenge that second conclusion here, nor can he. The indictment charged him with submitting a falsified statement of probable cause "to hinder, delay, and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of the federal offense charged in Count 1." A23-24.

For all of these reasons, the district court did not err in denying Dupree's motions to dismiss.

## II.    The district court did not abuse its discretion by admitting evidence of Dupree's employment history.

### A.    Standard of Review

This Court reviews preserved challenges to the admission or exclusion of evidence for abuse of discretion. *United States v. Machado-Erazo*, 47 F.4th 721, 728 (D.C. Cir. 2018).

### B.    Legal Standard

Federal Rule of Evidence 404(b) "does not prohibit character evidence generally, only that which lacks any purpose but proving character." *United States v. Bowie*, 232 F.3d 923, 930 (D.C. Cir. 2000). "[E]vidence of a defendant's prior bad acts *is* admissible for purposes *unrelated* to the defendant's character or propensity to commit crime, such as 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) (quoting Fed. R. Evid. 404(b)). It "is a rule of inclusion, not exclusion." *Bowie*, 232 F.3d at 929.

Determining whether a defendant's prior bad acts are admissible is a two-step process. This process "begins with the question of relevance: is the other crime or act relevant and, if so, relevant to something other than the defendant's character or propensity?" *Bowie*, 232 F.3d at 930. If it is, "the evidence is admissible unless excluded under other rules of evidence such as Rule 403." *Ibid.*

Rule 403 "prohibits the admission of relevant evidence if 'its probative value is *substantially* outweighed by the danger of unfair prejudice.'" *Cassell*, 292 F.3d at 795 (quoting Fed. R. Evid. 403) (emphasis

- 37 -

added). It "'tilts, as do the rules as a whole, toward the admission of evidence in close cases,' even when other crimes evidence is involved." *Ibid.* (citation omitted). "It does not bar powerful, or even 'prejudicial' evidence," but rather "focuses on the 'danger of *unfair* prejudice.'" *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (quoting Fed. R. Evid. 403). Because the "trial court is in the best position to perform this subjective balancing," this Court reviews a Rule 403 decision "only for 'grave abuse.'" *Cassell*, 292 F.3d at 795-796 (citation omitted).

### C. The evidence was admissible under Rule 404(b) to prove the willfulness element of Count 1.

To convict a defendant under Section 242, the Government must prove that the defendant acted "(1) 'willfully' and (2) under color of law (3) to deprive a person of rights protected by the Constitution or laws of the United States." *United States v. Lanier*, 520 U.S. 259, 264 (1997) (quoting 18 U.S.C. 242). Willfulness "requires proof that the defendant intentionally committed the act and did so with a 'bad purpose.'" *United States v. Clark*, 156 F.4th 664, 678 (D.C. Cir. 2025) (quoting *Screws*, 325 U.S. at 101). A defendant who "act[s] with such specific intent is aware that what he does is precisely that which the statute forbids." *United States v. Ehrlichman*, 546 F.2d 910, 920 (D.C. Cir. 1976).

In "most cases in which the defendant's state of mind is at issue, it may be near impossible to establish the requisite *mens rea* through direct evidence, and therefore proof must be inferred from circumstantial evidence instead." *United States v. Vega*, 826 F.3d 514, 523 (D.C. Cir. 2016) (citation and quotation marks omitted). Intent and knowledge are "well-established non-propensity purposes for admitting evidence of prior crimes or acts." *Bowie*, 232 F.3d at 930 (citing Fed. R. Evid. 404(b)).

Dupree does not dispute this. Instead, he argues that the prior-employment evidence was inadmissible because intent and knowledge are not relevant to the Government's Section 242 claim.[5] *See* Br. 40 ("Although 404(b) evidence can be admissible for the purpose of establishing intent, knowledge, or absence of mistake, those topics are not relevant in this case[.]"). Dupree mistakenly relies on *civil* 42 U.S.C. 1983 excessive-force cases for this position. *See* Br. 40-42.

Dupree's arguments and Section 1983 case citations are inapposite because Section 1983 suits do not require a plaintiff to prove that any defendant officer acted willfully. *See United States v. Proano*, 912 F.3d

---

[5] *But see* Br. 48-52 (arguing that the district court erred by not instructing the jury that willfulness requires an intent to violate the law).

431, 439 (7th Cir. 2019) ("[Section] 1983, unlike [Section] 242, is a civil statute that lacks a specific-intent requirement") (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 395-396 (2015)). Because intent is an element of the deprivation-of-rights charge, it is relevant to the jury's determination of guilt.

The numerous complaints and warnings Dupree received (including for use of force and excessive force), the subsequent training and counseling about his behavior, and his eventual termination after he failed to improve (A50-56) were relevant to prove knowledge and intent. As the district court recognized: "That [Dupree] was trained on and ultimately terminated for his behavior on the job, which included a complaint of use of force and one of excessive force, make it more probable that when he pepper-sprayed [Sinclair] he acted with the required mens rea," and did not accidentally use excessive force.[6] A185-186. Other

---

[6] Dupree argues that "absence of mistake" is not a valid basis for admitting the evidence because "it is undisputed that [he] voluntarily deployed his OC spray. It was not deployed 'by accident.'" Br. 43. As the district court explained, Dupree misunderstands what "mistake" means in this context: "[T]he Government would not be using their proffered evidence to show that Dupree did not deploy his pepper spray by accident, but rather to show that he did not use excessive force by accident. This distinction is significant." A185.

courts have reached similar conclusions. *See, e.g.*, *Proano*, 912 F.3d at 439 ("[A]n officer's training can help inform his state of mind. … [T]he fact that [the defendant officer] broke from his training could make it more likely that he acted willfully."). Thus, the district court did not abuse its discretion in admitting this evidence under Rule 404(b).

### D.    The prior-employment evidence was not unfairly prejudicial.

The probative value of the prior-employment evidence outweighed any potential prejudice. The documents demonstrated that, by the time he committed the charged offense in August 2019, Dupree had been warned numerous times, counseled, trained, and even suffered personnel consequences for the use of excessive force. A50-56. Put otherwise, he must have known by then the legal bounds on force and that his use of force was excessive. That he nonetheless used excessive force, demonstrates his intent. The balance also favored not excluding the evidence, as it had minimal prejudicial risk. It did not specify inflammatory details of the complaints or Dupree's prior offenses but rather used general terms like "Conduct Unbecoming." A50.

Even if another district court could have struck a different balance, this Court reverses a decision not to exclude evidence under Rule 403

- 41 -

"only for grave abuse." *Cassell*, 292 F.3d at 795-796 (citation omitted). In *United States v. Davis*, this Court explained that "[n]othing of [that] sort occurred" where it was "clear that the district court took its responsibility under Rule 403 seriously"; "explicitly 'weigh[ed]' and analyzed the probative value of admitting evidence of [the defendant's] prior bad acts"; and "took account of and sought to limit any potential prejudice to [the defendant] by, among other things, excluding mention of the prior bad acts until the end of the government's case in chief and barring reference to them in the government's opening and closing statements." 181 F.3d 147, 150-151 (D.C. Cir. 1999); *see also Gartmon*, 146 F.3d at 1022 ("[A]s long as it appears from the record as a whole that the trial judge adequately weighed the probative value and prejudicial effect …, we conclude that the demands of Rule 403 have been met." (citation omitted)).

As in *Davis*, the district court here clearly took its responsibility under Rule 403 seriously and fairly weighed the relevance and potential prejudice of the challenged evidence. The district court's two well-reasoned written opinions (A176; A887); delay of a final decision so it "would be better informed by the meaning, foundation, and relevance of

the evidence within the framework of the trial" (A187); admission of the prior-employment evidence while excluding the 2018 incident (A889-890); and use of a limiting instruction (SA47) make it "clear that the district court took its responsibility under Rule 403 seriously." *Davis*, 181 F.3d at 150; *see also United States v. Brown*, 597 F.3d 399, 400 (D.C. Cir. 2010) ("The district court's limiting instructions guarded against the jury's reliance on impermissible inferences that might have been drawn from the Rule 404(b) evidence."). So too does the district court's express weighing of the probative value against the potential prejudice. A888-890. The district court did not abuse its discretion in admitting the prior-employment evidence.[7]

---

[7] As previously mentioned, the district court admitted this evidence for *both* counts. Dupree does not challenge the admission of this evidence under Count 2 (except that he believes Count 2 should have been dismissed). So even if this Court holds that the district court abused its discretion in admitting this evidence for Count 1, any error was harmless because the evidence would have still been admitted to prove Count 2. *See* Fed. R. Crim. P. 52(a).

### E.    The district court did not abuse its discretion by rejecting Dupree's attempt to introduce positive character evidence.

As a general rule, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1).

Dupree argues that the district court abused its discretion by requiring him to redact evidence of his positive character from his impeachment evidence. Br. 48. It is unclear whether he is arguing that the court erred by not admitting the evidence for impeachment purposes or for character purposes. Br. 48. He does not argue that any exception to Rule 404(a)(1) applies. Dupree sought to impeach Gibson's statements contained in the prior-employment evidence (and related testimony) by introducing a letter of recommendation and questionnaire that Gibson submitted for Dupree to work at another police department. The district court admitted the letter and questionnaire but limited cross-examination "to what the Court deemed the 404(b) evidence to be allowed for … showing defendant's willfulness, intent, knowledge, motive" (A806) and required redactions of positive character evidence. *See* A1283-1292. The redacted positive character evidence included that Dupree got along

well with other officers; reported to work on time; looked professional in his uniform; had good communication skills; was reliable, honest, loyal, emotionally stable, and able to handle stressful situations; showed initiative; and could perform the full range of duties. A1283-1290.

But the letter, as redacted, still demonstrated that Gibson recommended Dupree for a position at a different police department (*see* A1283) and therefore provided ample basis for Dupree to impeach his testimony that he terminated Dupree because of complaints about, and issues with, his conduct. Dupree's one paragraph argument cites no legal authorities for his position and provides no explanation why "all of the positive evaluations [Gibson] made of Dupree's performance" in the letter (Br. 48) were necessary for impeachment, as opposed to bare character evidence.

The district court did not abuse its discretion by redacting the character evidence.

## III. The district court properly instructed the jury on the element of willfulness for Count 1.

### A.    Standard of Review

While this Court reviews the "propriety of a submitted jury instruction" *de novo*, it reviews "the choice of language to be used in a

particular instruction" only for abuse of discretion "unless the issue has not been preserved." *Clark*, 156 F.4th at 675. Unpreserved issues are reviewed for plain error. *Ibid.*

"Under plain error, there must be error, that is plain, and that affects a defendant's substantial rights." *United States v. Lawrence*, 662 F.3d 551, 556 (D.C. Cir. 2011). And only if those three conditions are met *and* "the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings" may an appellate court "exercise its discretion to notice a forfeited error." *Id.* at 556-57.

Plain error review applies here because Dupree did not preserve this argument. *See Clark*, 156 F.4th at 675. While he says that the district court issued its instruction over his objection, his record citations reveal nothing more than that he proposed the incomplete instruction he advances here. *See* Br. 51 (citing A198-199; A1087-1088; A1270-1271). Merely proposing a different jury instruction—especially one consistent with the ultimate instruction—does not preserve an objection. *See United States v. Purvis*, 21 F.3d 1128, 1130 (D.C. Cir. 1994). Rather, "[t]he objection must, in light of the surrounding circumstances, be sufficient to

provide the district court with some indicia of the potential defects in the instruction." *Ibid.*

Post-trial briefing—where Dupree referred to the jury instruction as "consistent with *Screws*" (A1151-1152)—demonstrates that, at best, Dupree did not make his objection sufficiently clear. And the district court confirmed that it understood Dupree's position to differ from that which he advances on appeal. *See* A1171 ("The parties agree that the Court properly instructed the jury of the Government's burden on this element."). Plain error review therefore applies. But because *Ehrlichman* and *Clark* control, Dupree's argument fails under any standard.

**B.    The court correctly instructed the jury on willfulness.**

Under *Screws*, the "willfully" mens rea of 18 U.S.C. 242 requires that the defendant had more than "a generally bad purpose." 325 U.S. at 107. The jury must "find that [the defendant] had the purpose to deprive the [victim] of a constitutional right." *Ibid.* In *Ehrlichman*, this Court expounded *Screws'* instruction: The "specific intent required to violate [18 U.S.C. 242] is the purpose of the [defendants] to commit acts which

- 47 -

deprive a citizen of interests in fact protected by clearly defined constitutional rights."[8] *See Ehrlichman*, 546 F.2d at 922.

So while "[w]illlfulness generally requires proof that the defendant intentionally committed the act and did so with a 'bad purpose,'" *Clark*, 156 F.4th at 678 (quoting *Screws*, 325 U.S. at 101), "[t]here is no requirement under [Section 242] that a defendant recognize the unlawfulness of his acts," *see Ehrlichman*, 546 F.2d at 922. Instead, "where there is a clearly delineated right and the defendant acts with a purpose to deprive the victim of the interests protected by that right, the defendant is willfully trampling on the victim's constitutional rights, even if he did not in fact 'recognize the unlawfulness of his acts.'" *Clark*, 156 F.4th at 678 (quoting *Ehrlichman*, 546 F.2d at 922).

Here, the district court's willfulness instruction (A1089) was almost identical to the Section 242 willfulness instruction that this Court approved in *Clark*:

> It is not necessary for you to find that the Defendant knew that he was acting unlawfully or that he was violating a specific law or constitutional provision. You may find that a

---

[8] While *Ehrlichman* concerned 18 U.S.C. 241, *Screws* applies to Sections 241 and 242 alike. *See Ehrlichman*, 546 F.2d at 921.

> defendant acted willfully even if you find that he had no real familiarity with the Constitution or with the particular constitutional right involved. You must, however, find that the Defendant intended to use more force than was reasonable under the circumstances.

156 F.4th at 676. Like Dupree, the defendant in *Clark* argued that "the jury should have been instructed to instead find that he intended to engage in unlawful conduct and *did so knowing that it was wrong or unlawful*" and that the instruction "allowed the jury to convict him based on reckless disregard of the law, which is contrary to precedent and a lesser state of mind than a knowing violation of the law." *Id.* at 676-677 (quotation marks omitted).

This Court disagreed: "Willfulness generally requires proof that the defendant intentionally committed the act and did so with a 'bad purpose.' … *Screws* and *Ehrlichman* have squarely held that in the context of Section 242, 'willfully' can be proven by acting in reckless disregard of a clearly delineated constitutional right." *Clark*, 156 F.4th at 678 (citing *Screws*, 325 U.S. at 101; *Ehrlichman*, 546 F.2d at 921). Accordingly, this Court concluded that the district court "followed *Ehrlichman*, binding precedent in the relevant context": "[I]n order to convict, the jury was twice explicitly instructed that they were required

- 49 -

to find that [the defendant] had the specific intent to use unreasonable force on the victims. This language was consistent with the instructions we approved in *Ehrlichman*[.]" *Id.* at 679.

It is clear from *Clark*, then, that here, the district court "followed binding precedent" and used "language [that] was consistent with the instructions [this Court] approved in *Ehrlichman*" when it issued the jury instruction in this case. *See Clark*, 156 F.4th at 679.

## C. Dupree's proposed jury instruction was inconsistent with binding precedent.

According to Dupree, the district court rejected his proposed instruction that the Government must "prove that the defendant acted with knowledge that his conduct was unlawful," and this was error because "it was essential that the jury be instructed that willfulness requires the intent to violate the law." Br. 51-52.

Omitted from Dupree's brief, however, is that the district court did instruct the jury that "[a] person acts willfully if he acts voluntarily and deliberately with the *specific intent to do something the law forbids*." A1089 (emphasis added). The additional language in the instruction, which Dupree focused on here, simply expounded on that standard—just like this Court did in *Ehrlichman* and *Clark*. Dupree cites neither

*Ehrlichman* nor *Clark.* Instead, he seeks to challenge an understanding of *Screws* that this Court has accepted for fifty years. *See Ehrlichman*, 546 F.2d at 922-923.

## IV. The district court did not err in using the aggravated assault sentencing guideline.

### A. Standard of Review

This Court reviews a district court's factual findings at sentencing for clear error and "will affirm" unless it is "left with the definite and firm conviction that a mistake has been committed." *United States v. Berman*, 145 F.4th 1376, 1380 (D.C. Cir. 2025) (citation omitted).

### B. The district court did not err in finding that Dupree committed a felonious assault that involved a dangerous weapon with intent to cause bodily injury.

Under the Sentencing Guidelines, "a district court determines a defendant's sentencing range by calculating the defendant's base offense level. A base offense level, in turn, is derived from a defendant's 'relevant conduct.'" *United States v. Burnett*, 827 F.3d 1108, 1120 (D.C. Cir. 2016). The district court makes the factual findings regarding the relevant conduct "under a preponderance of the evidence standard." *Ibid.* And this Court reviews "those factual findings for clear error." *Ibid.*

In this case, the district court correctly calculated Dupree's sentence using the aggravated assault guideline to determine the base offense level. Sentencing Guidelines § 2A2.2; A1193-1195. Relevant here, "'aggravated assault' means a felonious assault that involved a dangerous weapon with intent to cause bodily injury (*i.e.*, not merely to frighten) with that weapon." Sentencing Guidelines § 2A2.2, comment. (n.1). According to Dupree, the aggravated assault base offense level does not apply because there was insufficient evidence for the district court's finding that the OC spray was a dangerous weapon.

Contrary to Dupree's assertion, the district court did not rely on caselaw to conclude as a matter of law that OC spray is a dangerous weapon. Instead, it disregarded the out-of-circuit precedent that Dupree cited to establish that the OC spray was not a dangerous weapon, because this Court's "authoritative" precedent provided that it could be. A1193 (citing *Brown*, 125 F.4th at 1197-1198; *Worrell*, 848 F. App'x at 5-6). The district court accurately described *Brown* as "upholding the district court's finding that *a reasonable jury could* find the use of pepper spray constituted use of a dangerous weapon, because it *could* cause extreme pain, without relying on whether actual injury occurred" and *Worrell* as

"holding that the district court did not plainly err in finding that pepper spray was a dangerous weapon." A1193 (emphasis added).

Consistent with its proper role at sentencing, the district court then turned to whether the preponderance of the evidence in this case demonstrated that the pepper spray was a dangerous weapon. The court meticulously recounted the evidence that supported such a finding. *See* A1194 n.1. By simply pointing out that the evidence here was not identical to the evidence in *Brown* (Br. 55-56), Dupree has not demonstrated that the district court plainly erred.[9] The jury's lack of a finding on whether the pepper spray was a dangerous weapon is also irrelevant. The jury was not obligated to make such a finding. A1123; p. 21, *supra*. The district court was well within its authority to do so at sentencing.

## V.    The district court did not abuse its discretion when imposing a within-Guidelines sentence.

### A.    Standard of Review

This Court reviews "sentencing challenges that have been properly preserved" for "abuse of discretion under a two-step analysis." *United*

---

[9] *Brown* also required a higher burden of proof: beyond a reasonable doubt. *Brown*, 125 F.4th at 1195.

*States v. Lawrence*, 662 F.3d 551, 556 (D.C. Cir. 2011). First, "to 'ensure that the district court committed no significant procedural error, such as ... selecting a sentence based on clearly erroneous facts'" and second, to ensure that "the sentence is substantively reasonable." *Ibid.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).

But if the defendant fails to "make timely objections to findings in the PSR," "raise a claim at his sentencing hearing," or "object to [the] district court's ruling," the "more demanding plain error standard of review applies." *Lawrence*, 662 F.3d at 556.

### B.    Dupree's sentence was procedurally reasonable.

### 1.    Findings of Fact

"In resolving a factual dispute related to sentencing, the Guidelines permit a district court to 'consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.'" *United States v. Leyva*, 916 F.3d 14, 24-25 (D.C. Cir. 2019) (quoting Sentencing Guidelines § 6A1.3(a)); *see also* 18 U.S.C. 3661. And "it is well-settled that '[t]he district court's credibility determinations are entitled to the greatest deference'" on

appeal. *United States v. Hart*, 324 F.3d 740, 747 (D.C. Cir. 2003) (citation omitted)).

Dupree makes four complaints about the evidence that the district court considered at sentencing. First, the court listed "other events that were not even introduced into evidence at trial to support its sentence." (Br. 61 (citing A1245-1247)). Dupree leaves this Court and Government to guess what specific evidence he challenges and on what basis. In any event, the district court is not limited to considering evidence at sentencing that was introduced at trial. *See Leyva*, 916 F.3d at 25; 18 U.S.C 3661.

Second, the court "listed his stet docket in Maryland when discussing his criminal history, which was the Maryland state charges based on the same incident that were dropped when Sinclair refused to participate." Br. 61. Again, Dupree does not specify why this was erroneous. To the extent he argues that the district court impermissibly double counted the same conduct when determining his sentence, he did not make this objection at the district court. Nor does he adequately brief the issue on appeal, *see Al-Tamimi*, 916 F.3d at 6, or demonstrate prejudice. Further, the district court indicated that it gave little to no

weight to the stet case. *See* A1231 (noting that it is "not a conviction" and the likelihood that the state acts on it is "limited").

Third, according to Dupree, the district court "relied on disputed facts unresolved by the jury's verdict" by finding that Dupree falsely reported that Sinclair kicked and damaged his car and tried to jump out of it. Br. 61. Dupree does not point to a single piece of evidence to dispute these facts. While Francioni testified that he observed Sinclair kicking inside the police car (A577-578; A1282) he testified that he did not see Sinclair try to damage anything inside the vehicle and expressed that Dupree's statement regarding damage was untrue. SA41-42.

Regardless, it is the district court's role to make fact findings and credibility determinations at sentencing, and it may decide factual disputes that the jury left unresolved. *See Leyva*, 916 F.3d at 25; *Hart*, 324 F.3d at 747.

Dupree's last issue is that the district court "claimed that Dupree lied about Sinclair being decontaminated on scene, when one EMT claimed as such and Sinclair appeared decontaminated at the station." Br. 62. Dupree relies solely on a picture of Sinclair sleeping later that evening. A1304. In contrast, the EMT testified that the EMTs did not

decontaminate Sinclair on the scene (SA25-35); the EMTs' report documented that they did not make contact with Sinclair because he was "being combative" (A1301); and Buie testified that Sinclair was not decontaminated at the scene (A427). Thus, the district court did not clearly err when it found that the EMTs did not decontaminate Sinclair on the scene and that Dupree misrepresented facts when he reported otherwise. A1244; *see* A1298.

### 2.    Section 3553(a) Factors

Dupree asserts that "absent mentioning that there were sentencing factors (A1231), the district court did not analyze them or explain its sentence within those factors." Br. 62 (citing A1200-1253). Dupree did not preserve this argument, and it is factually incorrect.

First, the district court discussed the nature and circumstances of the offense and the history and characteristics of Dupree in considerable detail. A1231-1246; *see* 18 U.S.C. 3553(a)(1).

Second, the court emphasized the seriousness of the offense. *See, e.g.*, A1241 ("Obviously, one of the issues is how serious this offense is. This is a serious offense … He assaulted a restrained, handcuffed prisoner. His actions certainly erode the trust between law enforcement

and the community that they are empowered to serve and protect."); *see* 18 U.S.C. 3553(a)(2)(A). The court also considered evidence of Dupree's similar conduct in the past and found that it "shows a pattern of abuse of police power" and "increases the seriousness of the offense." A1241-1242.

Third, the court discussed sentence parity, *see* 18 U.S.C. 3553(a)(6), and exhibited thoughtful consideration of the cases that both sides presented:

> I've gone through all of [the cases cited by the parties] … All of them have some different variants in terms of the -- they were not cooky-cutter [sic] kinds of situations to what we had here. In some instances, the offense levels were different, so you had a different range for doing it. I didn't really find one that I thought was a good exemplar, but I certainly looked at all of them and took them into account and what different judges considered important in those cases in terms of considering it in my case. So I think, to some degree, that the facts in this case are unique enough in terms of looking at some other sentencing.

A1247.[10]

---

[10] Dupree accuses the district court of having "no response or analysis to the three comparator cases from other civil rights criminal prosecutions in the same court where all three defendants engaged in incidents resulting in more significant conduct and received *less* incarceration." Br. 61. As demonstrated above the line, that is

Finally, the court addressed the need for deterrence, given the risk of eroding public trust in law enforcement that conduct like Dupree's poses. A1247-1248; *see* 18 U.S.C. 3553(a)(2)(A)-(B).

Because Dupree did not preserve this argument, plain error review applies. "As this Court has said many times, there is no requirement that sentencing courts expressly list or discuss every Section 3553(a) factor at the sentencing hearing." *United States v. Knight*, 824 F.3d 1105, 1110 (D.C. Cir. 2016) (collecting cases). Here, the district court gave a detailed explanation for the sentence, which expressly discussed several Section 3553(a) factors. Because Dupree's assertion that the district court did not analyze the Section 3553(a) factors (Br. 62) is factually incorrect, Dupree has not identified anything that the district court *did*, let alone anything that the district court did *incorrectly*. Dupree has not demonstrated that the district court committed plain error.

Dupree also argues the district court "never addressed [his] requested departures to explain why they were not applicable or justified." Br. 61. Dupree sought departures for victim misconduct and

incorrect. And Dupree does not argue on appeal that any of these cases require a lesser sentence here.

susceptibility to prison abuse under Sentencing Guidelines § 5K2.1 and 5K2.0, respectively. Br. 60 (citing A1187-1190). But a district court's "discretionary denial of a departure is not subject to reversal unless the court incorrectly applied the Guidelines or imposed the sentence in violation of the law." *United States v. Smith*, 38 F. App'x 615, 616 (D.C. Cir. 2006) (citing *United States v. Sammoury*, 74 F.3d 1341, 1344-1345 (D.C. Cir. 1996); *United States v. Salmon*, 948 F.2d 776, 780 (D.C. Cir. 1991)). Dupree makes no argument that the district court did either.

### 3.    Dangerous Weapon Enhancement

Dupree also argues that his sentence was unreasonable given the "disputed enhancement and the double counting involved with the OC spray constituting both the basis for the aggravated assault guidelines and separately as a dangerous weapon enhancement."[11] Br. 62.  But as he conceded below (SA50), the Guidelines expressly foreclose his argument that the district court improperly double counted by applying both the aggravated assault guideline and the dangerous weapon enhancement. *See* Sentencing Guidelines § 2A2.2, comment. (n.3). ("In a

---

[11] Dupree's brief improperly categorizes this as a matter of substantive reasonableness.

case involving a dangerous weapon with intent to cause bodily injury, the court shall apply both the base offense level and subsection (b)(2).").[12] A1195-1196.

### C.    Dupree's sentence was substantively reasonable.

This Court "presume[s] a sentence within the range recommended by the Guidelines is not excessive." *United States v. Otunyo*, 63 F.4th 948, 960 (D.C. Cir. 2023). That presumption is especially relevant where, as here, a defendant alleges an unwarranted sentencing disparity "because the Guidelines are designed precisely to prevent disparity." *United States v. Alford*, 89 F.4th 943, 953 (D.C. Cir. 2024). Even if a defendant shows some degree of sentencing disparity, "that is only one factor among many that district courts must balance when sentencing." *Id.* at 954.

Without providing any legal authority or argument, Dupree declares his within-Guidelines (and thus presumptively reasonable) sentence substantively unreasonable. Br. 62. Dupree primarily relies on

---

[12] To the extent that Dupree's fleeting reference to a "*disputed enhancement*" (Br. 62 (emphasis added)), suggests that there is some other reason the dangerous weapon enhancement did not apply, he has not provided that reason. The Court should deem any such argument forfeited for insufficient briefing. *See Al-Tamimi*, 916 F.3d at 6.

his status as a first-time offender for why his sentence was unreasonable. Br. 62. But Dupree is not the innocent first-time offender that his brief paints him as. As the district court detailed at sentencing, his deplorable conduct goes well beyond the incidents in this case. And the Sentencing Guidelines allow a district court to "consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law," including acquitted conduct. Sentencing Guidelines § 1B1.4; *United States v. Dorcely*, 454 F.3d 366, 376 (D.C. Cir. 2006) ("Not only may the sentencing court consider acquitted conduct in calculating the appropriate Guidelines range but it may also consider that conduct in determining the sentence within the range."). The district court had discretion to consider Dupree's other conduct, including his employment history, the 2018 incident, and the acquitted Section 1512(b)(3) conduct. This history shows that his misconduct in this case was not aberrant behavior.

Dupree has not demonstrated that the district court erred in sentencing him.

## VI.    The district court did not commit plain error in restricting Dupree's employment as a condition of supervised release.

### A.    Standard of Review

"[T]he standard of review for a challenge to a special condition of supervised release depends on whether the defendant first objected in the district court." *United States v. Burroughs*, 613 F.3d 233, 240 (D.C. Cir. 2010). If the defendant objected in the district court, the challenge is reviewed for abuse of discretion. *Ibid.* But the defendant's challenge to a special condition of supervised release is reviewed on appeal for plain error if he did not raise the challenge in the district court. The question under plain error is "whether the condition 'is so plainly out of sync with the statutory goals enumerated in § 3553(a) as to warrant reversal under a plain error standard of review.'" *Ibid.* (citation omitted)).

### B.    Plain error review applies.

Although Dupree's counsel initially asked the court to limit the restriction to "employment as a special police officer or as a police officer," he never objected to the special condition, and ultimately told the court, "I agree with you that he should not be a security officer while on supervised release." A1226-1227. Even if insufficient to constitute an

invited error, Dupree's clear lack of objection triggers plain error review on appeal.

### C.    Under any standard of review, the restriction is valid.

Even if reviewed for an abuse of discretion, Dupree's challenge is meritless. In general, district courts may impose special conditions of supervised release that are "reasonably related" to the Section 3553(a) factors and involve "no greater deprivation of liberty than is reasonably necessary." *United States v. Malenya*, 736 F.3d 554, 559 (D.C. Cir. 2013) (quoting Sentencing Guidelines § 5D1.3(b)). "The court therefore must not only find the condition to be reasonably related to Congress's goals as related to the defendant but must weigh the consequences for the defendant's liberty against any likely achievement of the statutory purposes." *Ibid.* Put otherwise, the conditions must be narrowly tailored. *Ibid.*

The Guidelines expressly allow a district court to restrict a defendant's employment on supervised release if it determines that (1) "a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction" and (2) "imposition of such a restriction is

reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted." Sentencing Guidelines § 5F1.5; *see, e.g.*, *United States v. Carlson*, 406 F.3d 529, 532 (8th Cir. 2005) (affirming special condition prohibiting defendant, who was convicted of healthcare fraud, from employment in the medical field); *United States v. Betts*, 511 F.3d 872, 874-876 (9th Cir. 2007) (affirming condition prohibiting defendant, who was convicted of conspiracy related to a financial services fraud scheme and had violated the duty of loyalty, from employment "in any capacity wherein he has custody, control, or management, of his employer's funds, lines of credit, or any similar sources of monies").

In this case, the district court had a specific, articulated, and well-founded concern that Dupree would continue to engage in similar unlawful conduct if he returned to law-enforcement-related employment. A1225-1228; A1248-1249. As recounted by both the Government and the district court at length, Dupree has a troubling law enforcement record and has engaged in a pattern of abusive conduct, even after receiving warnings and consequences. Further, the court narrowly tailored this

condition to law-enforcement or security-related employment, which is directly related to the conduct in this case and necessary to protect the public from further crimes.

While Dupree argues that the court provided no guidance on the meaning of "security-related fields," that ignores the record. The court stated: "[I]f he presents himself and acts as if he's a security officer, then, yes, he is acting as a law enforcement officer. So I do have concerns about that." A1227. And even if the definition is vague, it does not prejudice Dupree because the court provided an exception that probation may approve the employment (A1258), which Dupree's counsel recognized at the sentencing hearing: "[E]ventually that will be addressed with Probation and the Court if there is an issue. But I agree with you that he should not be a security officer while on supervised release." A1227. The condition does not unduly burden Dupree's ability to earn a livelihood, as it does not impact any other industry, and Dupree's counsel even agreed that he should not be a security officer while on supervised release.

Thus, the district court did not abuse its discretion, let alone commit plain error, in restricting Dupree's employment while on supervised release.

## CONCLUSION

For the foregoing reasons, this Court should affirm the judgment.

Respectfully submitted,

HARMEET K. DHILLON
  Assistant Attorney General

JESUS A. OSETE
  Principal Deputy Assistant Attorney
  General

ROBERT J. KEENAN
  Acting Deputy Assistant Attorney
  General

  /s/ Greta Gieseke
DAVID N. GOLDMAN
GRETA GIESEKE
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 679-4564

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) and Circuit Rule 32(e)(1) because it contains 12,877 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

　　　　　　　　　　　　　　　 /s/ Greta Gieseke
　　　　　　　　　　　　　　GRETA GIESEKE
　　　　　　　　　　　　　　　Attorney

Date: April 6, 2026

# ADDENDUM

## STATUTES AND REGULATIONS AND SENTENCING GUIDELINES

## TABLE OF CONTENTS

**PAGE**

18 U.S.C. 242 ..................................................................................... A-1

18 U.S.C. 1512(b)(3) ......................................................................... A-1

18 U.S.C. 1512(i) ............................................................................... A-1

18 U.S.C. 3553(a) ........................................................................A-2, A-3

Sentencing Guidelines § 2A2.2(a)-(b) ............................................. A-3

Sentencing Guidelines § 5F1.5 ....................................................A-3, A-4

**18 U.S.C. 242.** Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

**18 U.S.C. 1512(b)(3).** Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—

hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation1 supervised release,,2 parole, or release pending judicial proceedings;

shall be fined under this title or imprisoned not more than 20 years, or both.

**18 U.S.C. 1512(i).** A prosecution under this section or section 1503 may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred.

A-1

**18 U.S.C. 3553(a).**  Factors to be considered in imposing a sentence.-- The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement--
(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.1

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

**Sentencing Guidelines § 2A2.2(a)-(b). Aggravated Assault.**
(a) Base Offense Level: 14

(b) Specific Offense Characteristics
(1) If the assault involved more than minimal planning, increase by 2 levels.

(2) If (A) a firearm was discharged, increase by 5 levels; (B) a dangerous weapon (including a firearm) was otherwise used, increase by 4 levels; (C) a dangerous weapon (including a firearm) was brandished or its use was threatened, increase by 3 levels.

(3) If the victim sustained bodily injury, increase the offense level according to the seriousness of the injury:

| Degree of Bodily Injury | Increase in Level |
| --- | --- |
| (A) Bodily Injury | add 3 |
| (B) Serious Bodily Injury | add 5 |
| (C) Permanent or Life-Threatening Bodily Injury | add 7 |

**Sentencing Guidelines § 5F1.5**
(a) The court may impose a condition of probation or supervised release prohibiting the defendant from engaging in a specified occupation,

A-3

business, or profession, or limiting the terms on which the defendant may do so, only if it determines that:

(1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and

(2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.

(b) If the court decides to impose a condition of probation or supervised release restricting a defendant's engagement in a specified occupation, business, or profession, the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public.

A-4